THE PEOPLE'S LAW FIRM, PLC
One East Washington, Suite 500
Phoenix, Arizona 85004
Telephone: (602) 456-1901
Facsimile: (602) 801-2834
www.the-plf.com

Stephen D. Benedetto (Ariz. Bar No. 022349)
benedetto@the-plf.com

*Attorneys for Plaintiff JeAnna Anderson*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JeAnna Anderson, a single woman,<br><br>Plaintiff,<br><br>v.<br><br>Anthony Armour, Jr. and Jane Doe Armour, husband and wife; City of Phoenix, an Arizona municipal corporation;<br><br>Defendants. | Case No. 2:16-cv-03563-JJT-BSB<br><br>**FIRST AMENDED COMPLAINT**<br><br>(JURY TRIAL DEMANDED) |

For her First Amended Complaint against Defendants Anthony Armour, Jr., Jane Doe Armour, and the City of Phoenix, Plaintiff JeAnna Anderson ("Plaintiff"), through undersigned counsel, hereby alleges as follows:

**<u>JURISDICTION AND VENUE</u>**

1.      Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343(a)(3)(4) and 1367(a). This Court has jurisdiction over Plaintiff's claims for violation of her civil rights under 42 U.S.C. § 1983 and pendent jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367(a).

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that the acts and omissions that give rise to this action occurred within this District within one year of the filing of the original Complaint, and this Court otherwise has jurisdiction.

3.     This case presents an actual case in controversy arising under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, and under the provisions of 42 U.S.C. §§ 1983 and 1988.

**PARTIES**

4.     Plaintiff JeAnna Anderson is a single woman residing in Maricopa County, Arizona.

5.     Upon information and belief, Defendants Anthony Armour and Jane Doe Armour are husband and wife, residing in Maricopa County, Arizona.

6.     At all relevant times to this Complaint, Defendant Anthony Armour was acting in furtherance of his respective martial community.

7.     Defendant City of Phoenix (the "City") is a municipal corporation created under the laws of the State of Arizona.

8.     The City maintains and operates a law enforcement agency known as the City of Phoenix Police Department.

9.     The City is under a duty to run its law enforcement activities in a lawful manner so as to preserve the peace and to preserve for its citizens the rights, privileges, and immunities guaranteed and secured to them by the Constitutions and laws of the United States and the State of Arizona.

10.     The City has established or delegated to its law enforcement agency the responsibility for establishing and implementing policies, practices, procedures and/or customs used by law enforcement officers employed by the City regarding the investigation, detention, arrest, and use of force during law enforcement operations.

11.     Every act and omission of the employees, representatives, and agents of Defendants detailed in this Complaint was performed under the color and pretense of the Constitutions, statutes, ordinances, regulations, customs and uses of the United States of America, the State of Arizona, and the City of Phoenix, by virtue of their authority as sworn

officers, and within the course and scope of their employment.

12.     For the purpose of Plaintiff's state law claims, but not for claims under section 1983, the City is responsible for the wrongful acts or omissions of its employees under the doctrine if *respondeat superior*.

## GENERAL ALLEGATIONS

### The Traffic Stop

13.     At approximately 10 p.m. of October 16, 2015, JeAnna Anderson, a 47-year-old single woman residing in Phoenix, left her home to run two quick errands in the area of 16th Street and Camelback in central Phoenix.

14.     Planning only on running into a CVS to pick up an allergy treatment and stopping by an ATM to withdraw cash to pay an upcoming bill, Ms. Anderson did not get fully dressed, wearing only a tee-shirt pulled over a sports bra and pair of sweatpants.  She grabbed her Yorkshire Terrier, "Dallas," brought him with her to run her errands.

15.     Ms. Anderson first went to CVS.  She then went to an outdoor ATM kiosk in the parking lot of the Camelback Colonnade shopping center located at 19th Street and Camelback.

16.     After completing her ATM withdraw Ms. Anderson drove her vehicle to parking lot's exit, stopping where it meets Camelback Road.  She looked both ways for traffic and watched a City of Phoenix Police Sport Utility-type Vehicle ("SUV") pass her.  She then exited the parking lot, turning left on Camelback to begin driving west, back to her apartment near the 16th Street and Camelback intersection.

17.     Ms. Anderson pulled into the turn lane on Camelback Road.

18.     As she was moving her vehicle into the #1 lane, Ms. Anderson heard tires squealing.  Checking her rearview mirror for traffic while trying to change lanes, Ms. Anderson observed the Police SUV do a U-turn several blocks behind her and accelerate to the rear of her vehicle.

19.   Ms. Anderson initially changed lanes to permit the Police SUV to pass her; when the Police SUV changed lanes with her, she pulled back into her original lane.  The Police SUV then followed her, activating its emergency lights.

20.   Seeing the red-and-blue lights in her rearview mirror, Ms. Anderson promptly pulled into a shopping center on the southeast corner of 16th and Camelback, waiting in her vehicle with her window rolled down.

21.   As she was waiting, Ms. Anderson located her driver's license and registration, and was holding these items in her hand when Defendant Armour approached her vehicle.

<u>The Roadside Interrogation</u>

22.   Officer Anthony Armour, a large, well-built and armed man in a full Phoenix police uniform contacted Ms. Anderson at her driver's-side window.

23.   Defendant Armour began aggressively interrogating Ms. Anderson about her license plates being suspended for lack of mandatory insurance.

24.   Ms. Anderson attempted to explain that she had only received notice from MVD about her license plates that day and attempted to show him the letter, which was on her passenger seat.

25.   In response, Defendant Armour accused her of "playing dumb."  He continued to interact aggressively with Ms. Anderson, speaking to her sharply and derisively while maintaining a physical position far enough to the rear of her vehicle that she could not see him clearly.

26.   Alone in her vehicle and uncomfortable with Defendant Armour's attitude, verbal expression, and body language, Ms. Anderson requested that he call a supervisor to the scene.

27.   When Defendant Armour refused, Ms. Anderson grabbed her phone and informed Defendant Armour that she was going to film the encounter for her own safety.

28.   Before Ms. Anderson had a chance to activate the phone's video recorder feature Defendant Armour grabbed her by the wrist, twisted her arm, and began forcibly removing her from the vehicle.

29.   Defendant Armour pulled Ms. Anderson out of the vehicle and slammed her against its side, pinning her side against the car and pressing himself against her from behind.

30.   Defendant Armour handcuffed Ms. Anderson, who was still pinned against her vehicle, behind her back.

31.   Defendant Armour then searched Ms. Anderson's person.  As he did so, Defendant Armour ran his hand up under Ms. Anderson's shirt, cupping her breast.

32.   After Defendant Armour handcuffed Ms. Anderson, he removed her eyeglasses from her head and put them in her right pants pocket.  As he did so, he stuck his hand inside a hole in her pocket, brushing against the top of her pubic region, before pushing his hand further down inside her pants and grasping her upper thigh.

33.   Defendant Armour then placed Ms. Anderson in the rear of his patrol vehicle and began to search her vehicle.

34.   While Defendant Armour was searching Ms. Anderson's vehicle, she was handcuffed behind her back in the back of his patrol vehicle – which was locked, with the windows up, and no air conditioning on.

35.   Feeling like she couldn't breathe, Ms. Anderson began to suffer an anxiety attack.  She tried to focus on taking deep breaths but could not gain control of her breathing and passed out, falling face first into the vehicle's foot-well.

36.   Ms. Anderson eventually came to, regaining consciousness while she was on her stomach, with her hands cuffed behind her back, lying in the foot well of back of Defendant Armour's vehicle.

37.     On the floor of the back of a locked police car belonging to a man who had just assaulted her, with no air circulation, and worried that she needed medical attention, Ms. Anderson again began panicking and started kicking the door to get out.

38.     Other officers arrived on the scene and responded to Ms. Anderson.  They pulled Ms. Anderson out of Defendant Armour's patrol vehicle – first by her handcuffs behind her back, and then by her legs.  Ms. Anderson fell on the ground.

<u>Follow-up by Paramedics and Other Officers</u>

39.     The officers sat Ms. Anderson against the tire of a patrol vehicle while waiting for paramedics to arrive.

40.     The officers left Ms. Anderson in handcuffs while the paramedics treated her for severely elevated blood pressure and panic.

41.     Upon information and belief, at some point while Ms. Anderson was on the ground, Defendant Armour took Ms. Anderson's cell phone and used it to take two photos: one photo of Phoenix Police officer standing over her and another photo of two paramedics talking to each other.

42.     After the paramedics cleared her, Defendant Armour called a Phoenix motorcycle officer (the "motor officer") to perform a DUI investigation.

43.     The motor officer completed a battery of tests on Ms. Anderson, concluded that she was not impaired by any drugs or alcohol, and left.

44.     Other officers then had Ms. Anderson sit on the curb until a sergeant arrived and spoke with her, informing her that she would need to call someone to pick up her dog.

45.     The sergeant assisted Ms. Anderson in making a phone call to her friend to request that he come pick up her dog.

46.     When Ms. Anderson's friend arrived, the officers handed him her belongings and allowed him to speak with her.

47.     Following a brief conversation between Ms. Anderson and her friend, Defendant Armour informed them both that he was going to take Ms. Anderson.

48.     Clearly fearful of Defendant Armour, Ms. Anderson began to panic and started begging her friend and the Sergeant to not allow Defendant Armour to take her.

49.     Defendant Armour drove Ms. Anderson to a Quik Trip parking lot, parked on the side of the store.

50.     While he was parked, Defendant Armour appeared to be sending text messages on his cell phone, accessed his mobile terminal, and at one point spoke with another officer.

51.     On numerous occasions, Ms. Anderson asked Defendant Armour to loosen the handcuffs; each time Defendant Armour refused.

52.     After a lengthy period of time, Defendant Armour transported Ms. Anderson to Central Booking to cause her to be booked into jail for felony resisting arrest, as well as for driving on a suspended license.

53.     Officer Armour searched Ms. Anderson's purse, emptying it and ripping it in the process, and removed from Ms. Anderson's person certain personal items, including cash.

54.     After she was released from jail, Ms. Anderson received an inventory of her personal items – among the items missing from the inventory was cash.

<u>Prosecution for False Charges</u>

55.     At some time after the Incident, Defendant Armour drafted Phoenix Police Department Incident Report Number 201500001997405 (the "Incident Report," attached hereto as "Exhibit A").

56.     At some time after drafting the Incident Report, Defendant Armour submitted the Incident Report to the City of Phoenix Prosecutor's Office for criminal charging.

57.    The Incident Report contained a series of false representations of fact, including *but not limited to* the following: (a) that Ms. Anderson responded to Defendant Armour's request for identification by stating that she "knew her rights" and refusing to provide identification until a supervisor responded to the scene; (b) that Defendant Armour and Ms. Anderson engaged in a dialogue regarding her obligations to produce her identification, and that she refused to do so; (c) that Defendant Armour asked Ms. Anderson to exit the vehicle or gave her a reasonable opportunity to exit without using force; (d) that Ms. Anderson stated "ooh I'm gon record this" when asked to exit her vehicle; and (e) that Ms. Anderson grabbed on to her steering wheel and refused to relinquish her grip in order to prevent Defendant Armour from removing her from the vehicle.

58.    The Incident Report omitted any reference to the motor officer or any other officers responding to the scene, with the sole exception of a "Sergeant Honeycutt #8768."

59.    The Incident Report also omitted any information about calling an officer to conduct a DUI investigation, and failed to identify the officer who conducted the DUI investigation or what was done.

60.    Based on Defendant Armour's Incident Report, Ms. Anderson was prosecuted for over nine months for resisting arrest, a class one misdemeanor punishable by up to a $2500 fine and 6 months in jail.

61.    Ms. Anderson defended herself vigorously, maintaining her innocence and conducting extensive discovery to prove that she had been the victim – not perpetrator – of an assault.

62.    During the course of the prosecution, Defendant Armour submitted to an interview with Ms. Anderson's defense at which his private counsel was present but the City of Phoenix Prosecutor's Office was not.

63.    During the interview, Defendant Armour (a) repeated the above-described false statements of fact; (b) represented that two more previously undisclosed City of

Phoenix Police Officers (Wuolette and Nosal) responded to the scene at 16th and Camelback; (c) disclosed for the first time that another officer, a DUI motorcycle officer whose name he did not know, had responded to the scene at his request; (d) represented that he "never searched" Ms. Anderson before placing her in his vehicle; and (e) represented that instead of searching Ms. Anderson he had Officer Virginia Wuolette (a female officer) search Ms. Anderson.

64.     During the course of Ms. Anderson's defense, it was determined that there *was* not "Sergeant Huneycutt, #8768" but, instead, that the sergeant who responded was Chadwick Hunnicutt (#8678) responded to the scene.

65.     During the course of Ms. Andersons' defense, it was determined that the motor officer was Officer Bryant (#6361), who did not write a supplemental report to the Incident Report and was not asked to do so by Defendant Armour or anyone else.

66.     During the course of Ms. Anderson's defense, Officers Wuolette and Nosal both submitted to interviews to discuss their involvement with Ms. Anderson.

67.     In separate interviews, both Officer Wuolette and Officer Nosal denied having any knowledge of the events set forth by Defendant Armour.

68.     Both Officers Wuolette and Nosal stated in their interviews that that they were not involved in this investigation, and that they were not at 16th and Camelback on the night of the incident but, instead, were conducting a lengthy investigation at their substation miles away in Sunnyslope.

69.     In her separate interview, Officer Wuolette further indicated that she had no memory of searching Ms. Anderson, and the only way she would have conducted the search would have been if Ms. Anderson had been brought to the Sunnyslope substation, where Officer Wuolette was that evening during a lengthy investigation with Officer Nosal.

70.     Per Defendant Armour's own interview and police records, he did not transfer Ms. Anderson to Sunnyslope but instead to Central Booking.

1       71.    In August 2016, after the interviews were completed and disclosed to the City

2   of Phoenix Prosecutor's Office, the prosecutor's office finally dismissed all remaining

3   charges against Ms. Anderson (without Ms. Anderson being required to enter into a plea

4   agreement).

5                          **FIRST CLAIM FOR RELIEF**
       **42 U.S.C. § 1983 – Excessive Force in Violation of Fourth Amendment**

6                              **(Against Defendant Armour only)**

7       72.    Ms. Anderson hereby incorporates by reference the allegations contained in

8   the foregoing paragraphs as if they were fully set forth herein.

9       73.    42 U.S.C section 1983 provides, in relevant part, as follows:

10          Every person, who under color of any statute, ordinance,
regulation, custom or usage of any state or territory of the

11          District of Columbia subjects or causes to be subjected any
citizen of the United States or other person within the

12          jurisdiction thereof to the deprivation of any rights, privileges
or immunities secured by the constitution and law shall be

13          liable to the party injured in an action at law, suit in equity, or
other appropriate proceeding for redress . . .

14

15  42 U.S.C. § 1983.

16      74.    Ms. Anderson is a citizen of the United States; Defendant Anthony Armour

17  is a person for the purposes of 42 U.S.C. § 1983.

18      75.    Defendant Armour was, at all times relevant hereto, acting under the color of

19  law in his capacity as a City of Phoenix police officer, and his acts and omissions were

20  conducted within the scope of his official duties or employment.

21      76.    At the time of the complained-of events, the Fourth Amendment to the United

22  States Constitution clearly established Ms. Anderson's right to be secure in her person from

23  unreasonable seizure through excessive force.

24      77.    At the time of the complained-of events, any reasonable police officer would

25  have known that the Constitution clearly establishes the right of American citizens to be

26  secure in their persons from unreasonable seizure through excessive force.

78.   Defendant Armour's actions and use of force, as described herein, were objectively unreasonable in light of the facts and circumstances confronting him and violated Plaintiff's rights.

79.   Defendant Armour's actions and use of force, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Ms. Anderson's federally protected rights.

80.   Under the circumstance, the force Defendant Armour used against Ms. Anderson shocks the conscience and violated Plaintiff's rights.

81.   Defendant Armour unlawfully seized Ms. Anderson by means of objectively unreasonable, excessive and conscious-shocking physical force, thereby unreasonably restraining Ms. Anderson of her freedom.

82.   Defendant Armour engaged in the above-described conduct willfully, maliciously, in bad faith, with willful indifference to and in reckless disregard of Ms. Anderson's federally protected constitutional rights, and with conscious awareness that he would cause Plaintiff severe physical and emotional injuries.

83.   Defendant Armour's acts and/or omissions were moving forces behind Plaintiff's injuries, intentionally depriving Ms. Anderson of her constitutional rights and causing him other damages.

84.   Defendant Armour is not entitled to qualified immunity for the conduct complained of in this Complaint.

85.   As a proximate result of Defendant Armour's unlawful conduct, Ms. Anderson suffered injuries and other damages and losses as described herein entitling him to compensatory, economic, consequential and special damages in an amount to be determine at trial.

86.   Ms. Anderson is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

87.     In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against Defendant Armour under 42 U.S.C. § 1983, in that the actions of this Defendant were taken maliciously, willfully, or with a reckless disregard of Plaintiff's constitutional rights.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Malicious Prosecution in Violation of Fourth Amendment (Against Defendant Armour only)

88.     Ms. Anderson hereby incorporates by reference the allegations contained in paragraphs 1 through 75 as if they were fully set forth herein.

89.     42 U.S.C section 1983 provides, in relevant part, as follows:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory of the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

90.     Ms. Anderson is a citizen of the United States; Defendant Armour is a "person" for the purposes of 42 U.S.C. § 1983.

91.     Defendant Armour, at all times relevant hereto, was acting under the color of law in his capacity as a City of Phoenix police officer and his acts or omissions were conducted within the scope of his official duties or employment.

92.     At the time of the complained-of events, the Fourth Amendment to the United States Constitution clearly established Ms. Anderson's right to be free from criminal prosecution without probable cause.

93.     At the time of the complained-of events, any reasonable police officer would have known that the Constitution clearly establishes the right of American citizens to be free from criminal prosecution without probable cause.

94.     Defendant Armour violated these rights when he instituted, procured, and/or continued a criminal proceeding against Ms. Anderson for resisting arrest.

95.     Specifically, as described above, Defendant Armour included false information in the Incident Report and knowingly omitted other material information, with the full knowledge that the City of Phoenix Prosecutor's Office would rely on his recitation of the events to initiate and pursue the prosecution.

96.     Further, in his interview with Ms. Anderson's counsel and investigator, Defendant Armour made further false representations of fact regarding his (and other officers') involvement with Ms. Anderson.

97.     Defendant Armour engaged in the above-described conduct willfully, maliciously, in bad faith, and in reckless disregard of Ms. Anderson's federally protected constitutional rights.

98.     The procurement of prosecution against Ms. Anderson – for allegations the Defendant Armour knew to be false and for the purpose of attempting to protect himself from civil suit or administrative complaint – was malicious, shocking, and objectively unreasonable in light of the circumstances.

99.     Those criminal proceedings terminated in Ms. Anderson's favor when the City of Phoenix Prosecutor's Office voluntarily dismissed the charges without any compromise by Ms. Anderson, reflecting a prosecutorial judgment that there was not even probable cause to maintain the charges against Plaintiff.

100.    The acts and omissions of Defendant Armour as described herein intentionally deprived Ms. Anderson of her constitutional and statutory rights and caused her other damages.

101.    Defendant Armour is not entitled to qualified immunity for the complained-of conduct.

102.    As a proximate result of Defendant Armour's unlawful conduct, Ms. Anderson has suffered actual injuries, and other damages and losses as described herein entitling him to damages in amounts to be determined at trial.

103.    Ms. Anderson is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

104.    In addition to compensatory, economic, consequential, and special damages, Ms. Anderson is entitled to punitive damages against Defendant Armour under 42 U.S.C. § 1983, in that the actions of each of these defendants were taken maliciously, willfully or with a reckless or wanton disregard of Ms. Anderson's constitutional rights.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Illegal Search**
**(Against Defendant Armour only)**

105.    Ms. Anderson hereby incorporates by reference the allegations contained in the foregoing paragraphs as if they were fully set forth herein.

106.    42 U.S.C section 1983 provides, in relevant part, as follows:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory of the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

107.    Plaintiff is a citizen of the United States; Defendant Armour is a "person" for the purposes of 42 U.S.C. § 1983.

108.    Defendant Armour, at all times relevant hereto, was acting under the color of law in his capacity as City of Phoenix police officer and his acts or omissions were conducted within the scope of his official duties or employment.

109.    At the time of the complained-of events, the Fourth Amendment to the United States Constitution clearly established Ms. Anderson's right to be free from a warrantless search that did not meet an exception to the warrant requirement.

110.    At the time of the complained-of events, any reasonable police officer would have known that the Constitution clearly establishes the right of American citizens to be

free from a warrantless search that did not meet an exception to the warrant requirement.

111.   Defendant Armour violated these rights when he accessed Ms. Anderson's phone, while she was detained, without her permission.

112.   Defendant Armour engaged in the above-described conduct willfully, maliciously, in bad faith, and in reckless disregard of Ms. Anderson's federally protected constitutional rights.

113.   Accessing Ms. Anderson's phone, without her permission, and using it to take photographs while shew as detained, was malicious, shocking, and objectively unreasonable in light of the circumstances.

114.   The acts and omissions of Defendant Armour as described herein intentionally deprived Ms. Anderson of her constitutional and statutory rights and caused her other damages.

115.   Defendant Armour is not entitled to qualified immunity for the complained-of conduct.

116.   As a proximate result of Defendant Armour's unlawful conduct, Ms. Anderson has suffered actual injuries, and other damages and losses as described herein entitling him to damages in amounts to be determined at trial.

117.   Ms. Anderson is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

118.   In addition to compensatory, economic, consequential, and special damages, Ms. Anderson is entitled to punitive damages against Defendant Armour under 42 U.S.C. § 1983, in that the actions of each of these defendants were taken maliciously, willfully or with a reckless or wanton disregard of Ms. Anderson's constitutional rights.

/ / /

1
2

### FOURTH CLAIM FOR RELIEF
**Assault and Battery under Arizona law**
**(Against Defendant Armour and City of Phoenix)**

3       119.    Ms. Anderson hereby incorporates by reference the allegations contained in

4    the foregoing paragraphs as if they were fully set forth herein.

5       120.    As set forth herein, during his contact with Ms. Anderson, Defendant Armour

6    caused harmful or offensive contact with Ms. Anderson.

7       121.    As set forth herein, Defendant Armour acted outside the scope of his authority

8    to use lawful force, and therefore had no legal right to cause the harmful or offensive contact

9    with Ms. Anderson.

10       122.    As a direct and proximate cause of Defendant Armour's harmful and

11    offensive contact, Ms. Anderson was injured and suffered other damages in an amount to

12    be proven at trial.

13       123.    As set forth herein, Defendant Armour was acting within the course and scope

14    of his employment as a police officer for the City of Phoenix when he made contact with

15    Ms. Anderson:  Defendant Armour was performing an act he was authorized to perform; he

16    was on-duty working in his regular job capacity; and his actions were motivated at least in

17    part by a purpose to serve the City of Phoenix.

18       124.    Because Defendant Armour was acting within the course and scope of his

19    employment for the City of Phoenix, Defendant City of Phoenix is vicariously liable for the

20    damages caused by his tortious conduct.

21
22

### FIFTH CLAIM FOR RELIEF
**Abuse of Process under Arizona law**
**(Against Defendant Armour and City of Phoenix)**

23       125.    Plaintiff hereby incorporates by reference the allegations contained in the

24    foregoing paragraphs as if they were fully set forth herein.

25       126.    The criminal justice system is designed for the purpose of prosecuting

26    individuals that the State has probable cause to believe committed a criminal offense.

127.   As set forth herein, Defendant Armour willfully used the criminal justice system to accomplish an ulterior purpose for which the process or procedure was not designed – namely, causing Ms. Anderson to be charged with a criminal offense in an effort to discourage, dissuade, or procedurally preclude her from filing suit against Officer Armour and/or the City of Phoenix for excessive force.

128.   The improper purpose set forth in the forgoing paragraph was, in fact, Defendant Armour's primary purpose in citing Ms. Anderson for resisting arrest.

129.   As a direct and proximate result of Defendant Armour's misuse of the legal process or procedure Ms. Anderson was injured and suffered other damages in an amount to be proven at trial.

130.   As set forth herein, Defendant Armour was acting within the course and scope of his employment as a police officer for the City of Phoenix when he decided to charge Ms. Anderson with a criminal offense:  Defendant Armour was performing acts he was authorized to perform; was on-duty, working in his regular job capacity; and his actions were motivated at least in part by a purpose to serve the City of Phoenix.

131.   Because Defendant Armour were acting within the course and scope of his employment for the City of Phoenix, Defendant City of Phoenix is vicariously liable for the damages caused by his tortious conduct.

132.   In addition to compensatory, economic, consequential, and special damages, Ms. Anderson is entitled to punitive damages against Defendant Armour under Arizona law because he took deliberate, intentional, and malicious action against her.

## SIXTH CLAIM FOR RELIEF
### Malicious Prosecution under Arizona law
### (Against Defendant Armour and City of Phoenix)

133.   Plaintiff hereby incorporates by reference the allegations contained in the foregoing paragraphs as if they were fully set forth herein.

134.   As set forth herein, Defendant Armour initiated and/or took active part in the

criminal prosecution against Ms. Anderson.

135.   As set forth herein, the criminal prosecution against Ms. Anderson was terminated in her favor when the City of Phoenix voluntarily dismissed the criminal complaint against Ms. Anderson without compromise or plea agreement of any kind.

136.   As set forth herein, Defendant Armour acted with malice, causing him to be charged with resisting arrest in an effort to discourage, dissuade, or procedurally preclude Ms. Anderson from filing suit against Officer Armour and/or the City of Phoenix for excessive force.

137.   As a direct and proximate result of Defendant Armour's malicious conduct, Ms. Anderson was injured and suffered damages in an amount to be proven at trial.

138.   As set forth herein, Defendant Armour was acting within the course and scope of his employment as a police officer for the City of Phoenix when he decided to charge Ms. Anderson with resisting arrest:   Defendant Armour was performing acts he was authorized to perform; was on-duty, working in his regular job capacity; and his actions were motivated at least in part by a purpose to serve the City of Phoenix.

139.   Because Defendant Armour was acting within the course and scope of his employment for the City of Phoenix, Defendant City of Phoenix is vicariously liable for the damages caused by his tortious conduct.

140.   In addition to compensatory, economic, consequential, and special damages, Ms. Anderson is entitled to punitive damages against Defendant Armour under Arizona law because he took deliberate, intentional, and malicious action against her.

### SEVENTH CLAIM FOR RELIEF
**Negligence**
**(Against Defendant Armour and City of Phoenix)**

141.   Plaintiff hereby incorporates by reference the allegations contained in the foregoing paragraphs as if they were fully set forth herein.

142.   Defendant Armour owed Ms. Anderson a duty of reasonable care, namely,

1   the duty to act as a reasonable police officer under the circumstances.

2   143.   Defendant City of Phoenix owed Ms. Anderson a duty of reasonable care,

3   namely, the duty to act as a reasonable municipality, operating a police department

4   reasonably, under the circumstances.

5   144.   Defendant Armour breached his duty of reasonable care to Plaintiff when,

6   among other things, he:  used unreasonable and unnecessary force against Ms. Anderson

7   and caused her to be injured; accessed her phone without her permission, a court order, or

8   a legal exception to the warrant requirement; and caused her to be cited and prosecuted for

9   resisting arrest without probable cause.

10   145.   A reasonable officer in Defendant Armour's position would not have taken

11   these actions.

12   146.   As set forth herein, Defendant Armour was acting within the course and scope

13   of his employment as a police officer for the City of Phoenix during his involvement in this

14   matter: Defendant Armour was performing acts he was authorized to perform; was on-duty,

15   working in his regular job capacity; and his actions were motivated at least in part by a

16   purpose to serve the City of Phoenix.

17   147.   Because Defendant Armour was acting within the course and scope of his

18   employment for the City of Phoenix, Defendant City of Phoenix is vicariously liable for the

19   damages caused by Defendant Armour's tortious conduct.

20   **EIGHTH CLAIM FOR RELIEF**
**Intentional Infliction of Emotional Distress**
21   **(Against Defendant Armour and City of Phoenix)**

22   148.   Plaintiff hereby incorporates by reference the allegations contained in the

23   foregoing paragraphs as if they were fully set forth herein.

24   149.   Defendant Armour's above-described conduct was extreme and outrageous

25   because an average member of the community would regard the conduct as atrocious,

26   intolerable in a civilized community, and beyond all possible bounds of decency.

150.   Defendant Armour's above-described conduct was intentional insofar as he intended to cause Ms. Anderson emotional distress.

151.   Defendant Armour's above-described conduct was reckless because he was aware of and consciously disregarded the near certainty that it would cause Ms. Anderson emotional distress.

152.   Defendant Armour's above-described conduct caused Ms. Anderson to suffer emotional distress.

153.   As a direct and proximate result of the actions of Defendants Ms. Anderson was injured and suffered damages in an amount to be proven at trial.

154.   As set forth herein, Defendant Armour was acting within the course and scope of his employment as a police officer for the City of Phoenix during the sum of his involvement in this matter: Defendant Armour was performing acts he was authorized to perform; was on-duty, working in his regular job capacity; and his actions were motivated at least in part by a purpose to serve the City of Phoenix.

155.   In addition to its independent and direct liability for negligence, because Defendant Armour was acting within the course and scope of his employment for the City of Phoenix, Defendant City of Phoenix is vicariously liable for the damages caused by Defendant Armour's tortious conduct.

**WHEREFORE**, Plaintiff JeAnna Anderson requests that the Court enter judgment against Defendants as follows:

a.   For damages in an amount to compensate Ms. Anderson fairly and fully for the numerous violations of her Constitutional Rights;

b.   For general, consequential, special, and compensatory damages, including but not limited to her pain and suffering, mental anguish, emotional suffering, and loss of enjoyment of life;

c.   For nominal damages as provided for by law;

1      d.  For prejudgment interest on all liquidated sums;

2      e.  For attorneys' fees under 42 U.S.C. §§ 1983 and 1988, and as provided for by

3      Arizona law;

4      f.  For Ms. Anderson's costs and other expenses incurred in this action; and

5      g.  Such other and further relief as the Court deems just.

6      **DATED** this 4th day of December, 2017.

7
                          THE PEOPLE'S LAW FIRM, PLC
8                           One East Washington, Suite 500
                           Phoenix, Arizona  85004

9

10                           By: /s/ Stephen D. Benedetto

11                              Stephen D. Benedetto

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1

## **CERTIFICATE OF SERVICE**

2

     I hereby certify that on the 4th day of December, the foregoing was filed with the Clerk's Office using the ECF system, which electronically transmitted a Notice of Filing to the following registered CM/ECF users:

3

4

Lori V. Berke, Esq.
Jodi C. Corbett, Esq.

5

THE BERKE LAW FIRM, PLLC
1601 North 7th Street

6

Phoenix, Arizona  85006
Lori@berkelawfirm.com

7

Jody@berkelawfirm.com
Laine@berkelawfirm.com

8

9

/s/ Stephen D. Benedetto
An employee of The People's Law Firm, PLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26