**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| JeAnna Anderson, | No. CV-16-03563-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Anthony Armour, Jr., *et al.*, | |
| Defendants. | |

Defendants Anthony Armour, Jr. and the City of Phoenix filed a Motion for Attorneys' Fees and Costs (Doc. 235, Mot.), to which Plaintiff JeAnna Anderson filed a Response (Doc. 243, Resp.) and in support of which Defendants filed a Reply (Doc. 246, Rpl.). Defendants also filed two Supplements to their Motion for fees at Docket Nos. 247 and 248.[1] No party requested oral argument and the Court concludes such argument would not assist it in the decisions in any event. LRCiv 7.2(f).

_____

[1] Also before the Court was Defendants' Motion to Strike Plaintiff's Response to their Motion for Attorneys' Fees (Doc. 245), to which Plaintiff filed a Response in opposition combined with a Motion for Leave to File Untimely Response (Doc. 249). Defendants filed a Reply in support of their Motion to Strike, combined with a Response to Plaintiff's Motion for Leave to File Untimely Response (Doc. 253), and Plaintiff filed a Reply in support of her Motion for Leave to File Untimely Response (Doc. 254). The Court denied Defendants' Motion to Strike and denied as moot Plaintiff's Alternative Motion for Leave in a brief September 30, 2021 Order (Doc. 257) indicating it would address its rulings here. The Court finds excusable neglect existed in Plaintiff's filing her Response to the Motion for Fees four days late, and an absence of any unfair prejudice to Defendants in allowing the late filing. And because the Court denied the Motion to Strike, Plaintiff's Alternative Motion was moot and denied as such.

## I.      Background and Procedure

Plaintiff's original complaint in this matter alleged eight claims against Defendants: 1) excessive force in violation of the Fourth Amendment pursuant to 42 U.S.C § 1983; 2) malicious prosecution in violation of the Eight Amendment pursuant to 42 U.S.C § 1983; 3) illegal search in violation of the Fourth Amendment pursuant to 42 U.S.C § 1983; 4) state law assault/battery; 5) state law abuse of process; 6) state law malicious prosecution; 7) state law negligence as against both Defendants and negligent training and supervision as against the City of Phoenix only; and 8) state law intentional infliction of emotional distress (IIED). (Doc. 1, Compl.) Upon Defendants' motion, the Court dismissed all three 1983 claims and the state law negligent training and supervision claim as against the City of Phoenix, and the 1983 claim for malicious prosecution claim as against Armour. (Doc. 25.) In her First Amended Complaint, Plaintiff maintained all surviving claims and revived her 1983 claim for malicious prosecution as against Defendant Armour. (Doc. 28, FAC.)

After Defendants filed a motion for partial summary judgment, Plaintiff agreed to voluntarily dismiss both the federal Section 1983 and state law claims for malicious prosecution in the FAC, and the Court granted summary judgment to Defendants on the Section 1983 illegal search claim, the state law claim for abuse of process, and the state law claim for negligence, denying the remainder of Defendants' motion. (Doc. 88.) Thus, as of January 23, 2019, only Plaintiff's 1983 claim for excessive force as against Defendant Armour only and her state law claims for assault/battery and IIED as against both Defendants survived to trial. Trial commenced 21 months later in October 2020, after which the jury returned a verdict for Defendants on the three remaining claims. (Doc. 226.) Defendants thereafter filed the instant Motion.

## II.     Analysis

Defendants seek a total of $244,650.24 in attorneys' fees and costs.[2] They ground their fee Motion on three separate provisions of law: 1) A.R.S. § 13-420, which provides

---

[2] This includes $11,721.30 in taxable costs and $232,928.94 in attorneys' fees. (Docs. 235, 247, 248.)

for defense recovery of fees in a civil action based on conduct justified under Chapter Four of the Arizona Criminal Code; 2) A.R.S. § 12-349, which provides for an award of reasonable attorneys' fees against any party who, in relevant part, brings a claim without substantial justification or unreasonably expands the proceeding; and or 3) 28 U.S.C. § 1927, which provides the Court with authority to award reasonable attorneys' fees against a party who unreasonably and vexatiously multiplies proceedings.[3] (Mot. at 5, 7, 11.) The Court analyzes each of these provisions separately.

### A.   Attorneys' Fees Under Arizona Revised Statutes § 13-420

Section 13-420 of the Arizona Revised Statutes provides in relevant part that

> [t]he court shall award reasonable attorney fees [to] a defendant in the defense of any civil action based on conduct otherwise justified pursuant to this chapter if the defendant prevails in the civil action.

A.R.S. § 13-420 (2006). With respect to the state law assault/battery claim, Defendants requested and received a jury instruction asking whether, if the jury found Defendant Armour used physical force on Plaintiff, it also found that use of force was justified. (Doc. 226 at 2.) The jury found the use of physical force was justified, and thus found for Defendants on the claim. In light of the jury's express finding of justification, Defendants urge they have met the requirements of Section 13-420 and are entitled to the attorneys' fees they incurred in the defense of the assault/battery claim. They also assert that because the other two claims surviving to trial—the federal Section 1983 civil rights excessive force claim and the state law IIED claim

> were based on the same set of facts as the claim for assault and battery, there is no way to separate out the attorneys fees incurred to defend the federal claim or the intentional infliction of emotional distress claim. Therefore, under this statute, defendants are entitled to recover all of the attorneys fees and non-taxable costs they incurred in defending this case, unless

---

[3] Defendants cite as alternate federal authority for such an award the Court's inherent authority to address actions brought or maintained in bad faith, as recognized in, for example, *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765 (1980). (Mot. at 11.)

those attorneys' fees and costs were specific solely to the federal claim.

(Mot. at 5-6.)

Plaintiff responds that 42 U.S.C. § 1988, the statute governing the award of attorneys' fees in federal civil rights actions, preempts Section 13-420 and any award of fees under it in this matter when federal and state common law claims overlap. (Resp. at 4-6.) Defendants urge there is no preemption, as Plaintiff was the master of her Complaint and could have foregone her state tort claims, but chose to add them. (Rpl. at 7.)

Federal preemption may be either express or implied. *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992). As Section 1988 provides no express preemption language toward state attorneys' fee statutes, the Court looks to the law governing implied preemption, of which there are two varieties: field preemption and conflict preemption. *Id*. Field preemption exists where "Congress intends federal law to 'occupy the field.'" *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). Conflict preemption, on the other hand, exists when "it is impossible for a private party to comply with both state and federal law" or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id*. at 372-73 (cleaned up). The Court here analyzes for conflict preemption.

42 U.S.C. § 1988 allows attorneys' fees to a prevailing defendant in a civil rights action under Section 1983 only if the plaintiff's original claims were "frivolous, unreasonable or without foundation." *Harris v. Maricopa County Sup. Ct.*, 631 F.3d 963, 968 (9th Cir. 2010). Conversely, as set forth above, Arizona's Section 13-420 mandates an award of fees to a prevailing defendant whose actions were found to be justified. In the instant case, then, based on the identical facts, the state law would require Plaintiff to pay attorneys' fees on state law claims encompassing the identical conduct underlying federal claims for which attorneys' fees are prohibited by the statute's limitation. And the reason for that limitation is highly germane here:

> Our laws encourage individuals to seek relief for violations of their civil rights, and allow a defendant to recover fees and costs from the plaintiff in a civil rights case only "in exceptional circumstances" in which the plaintiff's claims are "frivolous, unreasonable or without foundation." . . . Congress and the courts have long recognized that creating broad compliance with our civil rights laws, a policy of the "highest priority," requires that private individuals bring their civil rights grievances to court. [] Even when unsuccessful, such suits provide an important outlet for resolving grievances in an orderly manner and achieving nonviolent resolutions of highly controversial, and often inflammatory, disputes. Guaranteeing individuals an opportunity to be heard in court instead of leaving them only with self-help as a means of remedying perceived injustices creates respect for law and ameliorates the injury that individuals feel when they believe that they have been wronged because society views them as inferior. Our system of awarding attorneys fees and civil rights cases is in large part dedicated "to encouraging individuals injured by... discrimination to seek judicial relief." ... this policy was adopted expressly in order to avoid discouraging civil rights plaintiffs from bringing suits, and thus "undercutting the efforts of Congress to promote the vigorous enforcement of " the civil rights laws.

*Harris*, 631 F.3d at 968, 971 (holding that Arizona law prohibits requiring a plaintiff to pay fees that a prevailing defendant incurred in defending against a nonfrivolous civil rights claim). The Court finds that application of A.R.S. § 13-420 and its mandate of an award of attorneys' fees to a prevailing defendant in this case, for successfully defending a non-frivolous civil rights claim, would stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting 42 U.S.C. § 1983 *et seq*. In so holding, the Court finds persuasive value in *Longoria v. Pinal County*, 2:15-CV-00043-SRB, 2016 WL 10637087 at *2 (October 7, 2016), wherein another member of this Court faced the identical issue and reached the same result.[4]

---

[4] Defendant cites two other cases in this district—*Mendez v. City of Scottsdale*, CV-12-00285-SMM, 2015 WL 13654011 (February 27, 2015) and *Smith v. City of Chandler*, 12-CV-02391-FJM, 2017 WL 6502748 (August 9, 2017), both of which allowed an award of attorneys' fees under ARS § 13-420 where a defendant prevailed against both federal civil rights claims under Section 1983 and state tort claims. And defendant urges this Court

1    The Court thus concludes that Defendants are not entitled to attorneys' fees under

2    Section 13-420 absent a showing that the fees at issue were not incurred to defend the

3    federal claims. This Defendants cannot show by their own admission. (Mot. at 5-6

4    ("because the federal claim for excessive force and the state law claim for intentional

5    infliction of emotional distress were based on the same set of facts as the claim for assault

6    and battery, there is no way to separate out the attorneys' fees incurred to defend the federal

7    claim or the intentional infliction of emotional distress claim.").) This is true of all the state

8    law claims Plaintiff brought in this matter. Core to the federal civil rights claims and to the

9    state law claims are the same actions alleged on Defendant Armour's part: the removal of

10   Plaintiff from her car by force; the physical contact during the search of her person; placing

11   her under arrest; and initiation of charges against her. Defendant is not entitled to attorneys'

12   fees under section 13-420.

13   **B.     Attorneys' Fees Under Arizona Revised Statutes § 12-349**

14       Alternatively, Defendants assert they are entitled to attorneys' fees pursuant to

15   A.R.S. § 12-349, which provides in relevant part that

16
17       . . . in any civil action commenced . . . in a court of record of
         this state, the court shall assess reasonable attorney fees,
18       expenses and, at the court's discretion, double damages not to
         exceed $5000 against an attorney or party . . . if the attorney or
19       party . . . [b]rings . . . [a] claim without substantial justification
         [or] unreasonably expands or delays the proceeding.
20

21   _____

22   should discount the ruling in *Longoria* because it is unpublished. In so arguing, Defendant
     overlooks that *Mendez* and *Smith* are similarly unpublished. Moreover, whether any of the

23   district court cases the parties raise to the Court are published or not is irrelevant—this
     Court considers other district court cases, which are not binding precedent, solely for the

24   persuasive value of their reasoning. In that vein, *Mendez* is in any event of little assistance,
     as the court there was never presented with, and therefore did not consider, the issue of

25   preemption in an uncontested fee motion. Finally, the court in *Smith* does not appear to
     have considered *Sees v. KTUC, Inc.*, in which the Arizona Court of Appeals, in holding

26   that an unsuccessful plaintiff bringing civil rights claims and state tort claims may not be
     assessed attorneys' fees under Arizona statute where her claims were not frivolous, ruled

27   that "[f]ederal policy disfavors such an award under [federal civil rights laws] because such
     awards undercut efforts to enforce the Congressional intent that discrimination be

28   eradicated. We believe that state policy should be equally protective." 148 Ariz. 366, 369
     (App. 1985). The Court concludes *Longoria* presents by far the most persuasive authority
     on the issue before it.

A.R.S. § 12-349(A)(1-3)(1986). The Arizona Legislature has defined a claim brought "without substantial justification" as one that "constitutes harassment, is groundless and is not made in good faith." A.R.S. § 12-349(F) (1986). For purposes of this statute, a claim is groundless or frivolous "if the proponent can present no rational argument based upon the evidence or law in support" of it. *See, e.g.*, *Rogone v. Correia*, 335 P.2d 1122, 1129 (Ariz. Ct. App. 2014)(cleaned up). "An objective standard may be utilized to determine groundlessness, but a subjective standard determines . . . bad faith." *Phoenix Newspapers, Inc., v. Dep't of Corrs.*, 934 P.2d 801, 808 (Ariz. Ct. App. 1997).

As Defendants expressly seek fees under Section 12-349(A) for five of the eight claims brought,[5] the Court analyzes each of them under the above standard. It notes as a preliminary matter that unlike A.R.S. § 13-420, Section 12-349 does not raise a federal preemption issue, as the federal civil rights statutory scheme of 42 U.S.C. §§ 1983 and 1988 contemplate and allow for attorneys' fees against an unsuccessful plaintiff where the claims were "frivolous, unreasonable or without foundation." *Harris*, 631 F.3d at 968. Thus an award of fees under Section 12-349 where Defendants showed a claim or claims were brought without substantial justification would not implicate conflict preemption.

### 1.    Claim 5 - State Law Abuse of Process

Arizona law recognizes a tort claim for abuse of process where a plaintiff proves (1) a willful act in the use of judicial process; (2) for an ulterior purpose not proper in the regular conduct of the proceedings. *Nienstedt v. Wetzel*, 651 P.2d 876, 881 (Ariz. Ct. App. 1982). A plaintiff meets the second element by "showing that the process has been used primarily to accomplish a purpose for which the process was not designed." *Id*. In the context of this tort, Arizona interprets "process" as encompassing "the entire range of procedures incident to the litigation process." *Id*. at 880.

---

[5] In Section II.B.2 of their Motion addressing fees under Section 12-349, Defendants state that "Plaintiff asserted groundless claims such as malicious prosecution, abuse of process, negligence and illegal search and seizure without any meritorious basis to do so." (Mot. at 8.) Defendants proceed to analyze only these claims for groundlessness. Defendants do not appear to seek fees under Section 12-349 for the three claims that went to the jury—excessive force under Section 1983 (Claim 1) and the state law claims for assault/battery (Claim 4) and IIED (Claim 8).

1

2

3

4

5

> Although the process may have been properly obtained or issued . . . [i]t is the subsequent misuse which constitutes the misconduct for which liability is imposed. However . . . there is no action for abuse of process when the defendant uses the process for its authorized or intended purpose, even though with bad intentions, or if there is an incidental motive of spite.

6

*Morn v. City of Phoenix*, 730 P.2d 873, 875 (Ariz. Ct. App. 1986) (cleaned up).

7

8

      As the Court found in denying Defendants' Motion to Dismiss the abuse of process claim, Plaintiff

9

10

11

12

13

> stated a claim for abuse of process sufficient to survive the motion to dismiss stage. Her Complaint identifies the willful act—causing plaintiff to be charged with a criminal offense— and the ulterior purpose in doing so—to discourage, dissuade or procedurally preclude her from filing suit for excessive force.

14

15

16

(Doc. 25 at 8.) Later, after discovery failed to yield evidence sufficient to sustain a controverted issue of fact on these elements, the Court granted summary judgment for Defendants on the claim, finding that

17

18

19

20

21

22

> [e]ven if Armour had an ulterior motive in bringing the resisting arrest charge against Anderson, merely bringing a charge does not constitute abuse of process. *See Joseph* [*v. Markowitz*], 551 P.2d [571] at 575 ("abuse of process requires some act beyond the initiation of a lawsuit"). Anderson has presented no evidence that Armour was involved in the judicial process after her arrest and booking in the jail.

23

24

25

26

27

28

(Doc. 88 at 23.) The Court's determination to dismiss the abuse of process claim based on a lack of evidence of Defendant's acts in furtherance of the prosecution after arresting and booking Plaintiff could not be made until after Plaintiff had taken her discovery. The Court finds no support for a subjective determination that Plaintiff acted in bad faith in bringing or maintaining her abuse of process claim to summary judgment under these circumstances; nor does it find support for an objective finding of groundlessness through

the pleading and discovery stage of this matter. It will deny attorneys' fees on Claim 5 under Section 12-349.

### 2.   **Claims 2 and 6 – Malicious Prosecution**

Arizona law prescribes six elements for the tort of malicious prosecution: 1) there was a prosecution; 2) it terminated in favor of the plaintiff; 3) defendant was the prosecutor; 4) defendant was motivated by malice; 5) probable cause was lacking; and 6) the plaintiff sustained damages. *Overson v. Lynch*, 317 P.2d 948, 949 (Ariz. 1957). While a malicious prosecution action may be brought against one "who wrongfully caused the filing of the charges," *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002), if that defendant "loses control over the case once the prosecution has been initiated, his participation in the prosecution thereafter is not such as will subject him to liability." *Walsh v. Eberlein*, 560 P. 2d 1249, 1252 (Ariz. Ct. App. 1976 ).

Plaintiff alleged in the operative complaint that Defendant Armour initiated and or took active part in the criminal prosecution against her; that the City of Phoenix voluntarily dismissed that case against her; and that Defendant Armour acted with malice, in an effort to discourage, dissuade, or procedurally preclude her from filing suit against him and or the City of Phoenix for excessive force. (Doc. 1, Complaint ¶¶ 125-130; Doc. 28, FAC ¶¶ 133-137.) In denying Defendants' Motion for Dismiss the malicious prosecution claims, the Court found all elements were adequately pleaded, and noted that the only element Defendants contested was that Defendant Armour was a "prosecutor" for purposes of element 3. (Doc. 25 at 9-10.) After finding Plaintiff's allegation that Defendant Armour arrested her, caused her to be charged with resisting arrest and "took active part in the criminal prosecution," the Court allowed the claims to go forward, identifying for the parties the question of fact that could not be determined before discovery on a motion to dismiss and would be dispositive of whether the claims would survive summary judgment: "whether Armour lost control of the prosecution at some point," as outlined in *Walsh*, *supra*.

Discovery on the malicious prosecution and other claims closed on May 4, 2018. (Doc. 35.) On May 30, 2018, Defendants filed their Motion for Partial Summary Judgment, seeking judgment on the malicious prosecution claims. (Doc. 70.) In her Response thereto, Plaintiff conceded the claims. On these facts the Court cannot conclude Plaintiff acted in bad faith in maintaining either malicious prosecution claim. The Court concluded she had adequately pleaded a claim and identified the evidentiary predicate for survival of that claim to trial. Plaintiff took her discovery, and when her counsel concluded their review of the evidence gathered, surrendered the claims. While it would have been optimal for Plaintiff to alert Defendants' counsel of that surrender after discovery closed and before counsel devoted some limited time to briefing the claims on summary judgment, Plaintiff's actions were reasonable and do not reflect bad faith. Nor was maintenance of the malicious prosecution claims groundless through the discovery phase of the matter.[6] The Court will deny attorneys' fees on Claims 2 and 6 under Section 12-349.

### 3.  **Claim 3 – Section 1983 Search**

Plaintiff alleged in Claim 3 of the FAC that Armour violated her Fourth Amendment rights when he accessed her cell phone and took two pictures with it while she was detained without her permission, a warrant or a valid exception to the warrant requirement. (FAC ¶¶ 111, 113.) The Court granted summary judgment on Claim 3, concluding that after discovery, Plaintiff still "ha[d] not presented evidence, other than her belief, that Armour is the person who took the photographs." (Doc. 88 at 20.) But like the other claims for which Defendants seek attorneys' fees under Section 12-349, they seem to conflate a failed claim with a groundless claim and one brought in bad faith.

---

[6] Defendants argue in their instant Motion for Attorneys' Fees that there was ample evidence of probable cause to arrest Plaintiff from the outset of the case and thus no evidence of a lack of probable cause, and they "put Plaintiff and her counsel on notice" of this fact early in the matter, first with their filing of the Partial Motion to Dismiss at Doc. 11." (Mot. at 8-9.) The Court has reviewed the motion for partial dismissal and concludes once again, just as it did in ruling upon same, that Defendants did not raise lack of probable cause in either section of their motion discussing Claims 2 or 6. Moreover, Plaintiff—and as importantly, her counsel—were entitled to explore this issue in discovery rather than take Defendants' word as conclusive.

By way of example, Defendants argued that Plaintiff's Section 1983 search claim "was groundless and should never have been brought because there was never any evidence that Officer Armour searched Plaintiff's cell phone following her arrest." (Doc. 235 at 9-10.) That is not accurate. There was at least some circumstantial evidence Armour had accessed the phone. He was the arresting officer and seized it; moreover, he was the only officer present at the time of arrest and subsequent seizure of Plaintiff's phone and for some time thereafter; he also was the only officer present with the phone when he processed her in his patrol vehicle for an extended period in a convenience store parking lot after the arrest and before transporting her for booking. Finally, on her phone were two photographs taken at the arrest scene depicting police and emergency responders to it, none of whom was Armour. While the Court concluded that this bare circumstantial evidence was insufficient to allow the claim to go to a jury, it was enough to allow discovery to proceed, especially in a circumstance where Defendants were uniquely in possession of all information about what happened to the phone when it was out of Plaintiff's possession, and the universe of persons potentially with knowledge of those facts—the handful of responders who were on scene after the arrest—could be and ultimately were interviewed or deposed in numbers small enough to be proportional to the needs of the case. The Court will not equate this claim supported by insufficient evidence with one that is frivolous, groundless or brought in bad faith. It will deny attorneys' fees on Claim 3 under Section 12-349.

### 4.     Claim 7 – Negligence

To recover on a negligence claim in Arizona, a plaintiff must prove a duty requiring the defendant to conform to a standard of care; a breach of that duty; a causal connection between breach and injury; and resulting damages. *Ryan v. Napier*, 425 P.3d 230, 235 (Ariz. 2018). However, as the Court previously pointed out in this matter (Doc. 88 at 23), the above standard only applies to negligence claims against a law enforcement officer that is independent of the intentional use of physical force. *Id.* at 233. In her Amended Complaint, Plaintiff alleged negligence in three separate acts by Armour: 1) his use of

"unreasonable and unnecessary force" against her; 2) his extralegal accessing of her telephone; and 3) his causing her to be cited and prosecuted without probable cause. (Doc. 28, FAC ¶ 144.)[7] Thus the Court measured only the second and third alleged acts against this standard in determining whether a controverted issue of fact existed as to either of them.

Like the malicious prosecution, abuse of process and illegal search claims, the Court finds the negligence claim predicated on these two alleged acts was not groundless and Plaintiff was entitled to conduct discovery to determine whether evidence supported it. And when discovery closed and the Court found no such evidence, it dismissed the claim, as occurs routinely with unsuccessful but non-frivolous claims. Nor does the Court find bad faith in Plaintiff bringing her claim as to the latter two alleged acts.

Plaintiff's negligence claim as predicated on the first act alleged of Armour—his use of unreasonable and unnecessary force—ultimately stands in a similar posture. It is now the law of Arizona that a plaintiff "cannot assert a negligence claim based solely on an officer's use of force." *Ryan*, 425 P.3d at 233. After *Ryan*, Plaintiff's negligence claim as predicated on Armour's alleged use of unreasonable and unnecessary force categorically would fail as a matter of law and thus be groundless. But the Arizona Supreme Court decided this matter of first impression in *Ryan* on August 23, 2018, after discovery closed, Plaintiff already had filed her Response briefing on summary judgment and the matter was pending before the Court. The Court will not find bad faith in this circumstance. It thus will deny attorneys' fees on Claim 7 under Section 12-349.

## C.   Fees Under 28 U.S.C. § 1927 and the Court's Inherent Authority

"Any attorney or other person . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28

---

[7] Defendants do not appear to seek fees under Section 12-349 for Plaintiff's claim of negligent training and supervision, which comprised Claim 7 in the original Complaint and was dismissed at Doc. 25. Defendants' arguments in the instant Motion go only to the "straight" negligence aspect of the claim as against Armour, and by *respondeat superior*, the City, that survived partial dismissal; thus the Court analyzes only that claim.

U.S.C. § 1927. A showing of bad faith is not required for sanctions under § 1927; a showing of recklessness is sufficient. *Fink v. Gomez*, 255 F.3d 989, 993 (9th Cir. 2001). "For [§ 1927] sanctions to apply, if a filing is submitted recklessly, it must be frivolous, [or] if it is not frivolous, it must be intended to harass." *In re Keegan Mgmt. Co., Sec. Lit.*, 78 F.3d 431, 436 (9th Cir. 1996). "[R]eckless nonfrivolous filings, without more, may not be sanctioned." *Id.*

The Court also possesses inherent authority to issue sanctions beyond the costs of attorneys' fees and expenses. *B.K.B. v. Maui Police Dept.*, 27 F.3d 1091 (9th Cir. 1091). Sanctionable conduct under this authority includes that "which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). A court's exercise of its inherent sanctioning power is appropriate when there has been "willful disobedience of [a] court order ... or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons...." *Fink*, 239 F.3d at 991 (cleaned up). In sum, "recklessness suffices for § 1927, but bad faith is required for sanctions under the court's inherent power." *Fink*, 239 F.3d at 993.

For the reasons stated at length and repeatedly *supra*, the Court does not find Plaintiff or her counsel acted in bad faith or recklessly in maintaining this matter. To be sure—and as Plaintiff's counsel has acknowledged—the conduct of Plaintiff's case involved errors and failings. This constitutes negligence at most, not recklessness or bad faith. The Court already has noted that in denying Defendants' Motion for Partial Dismissal, it found that Plaintiff had satisfied the legal standard to move those surviving claims forward to and through discovery and to the next test at the dispositive motion stage. No party has presented any information causing the Court to determine, in hindsight, that its decisions were influenced by an action Plaintiff or her counsel took recklessly or in bad faith. Nor does the Court find bad faith or recklessness in Plaintiff pressing her Claims 2, 3, 5, 6 and 7 thereafter through discovery and until the Court terminated them on summary judgment.

1      In denying Defendants' Motion for Summary Judgment as to the Section 1983

2  excessive force, state assault/battery and state IIED claims, the Court concluded there were

3  controverted issues of fact regarding each claim—that is, a jury would have to make a

4  credibility determination as to whether it believed Plaintiff Anderson or Defendant

5  Armour, and if the jury credited Plaintiff's version of events, it could plausibly find for

6  Plaintiff on those claims. This is not to say any claim that survives summary judgment can

7  *per se* never be brought in "bad faith, vexatiously, wantonly or for oppressive reasons"—

8  the Court still must evaluate Plaintiff's conduct according to the standards of *Fink*. But

9  here the Court readily concludes Plaintiff did not violate this standard regarding its pursuit

10  through trial of Claims 1, 4 and 8.

11      Contrary to Defendants' argument elsewhere in briefing, the fact that Defendant

12  Armour possessed a lawful basis to stop Plaintiff, to remove her from her vehicle, to arrest

13  her and to search her incident to arrest would not absolve him of liability for excessive

14  force if the jury concluded he used more force than reasonably necessary to remove her

15  from her car, take her into custody or search her. Plaintiff testified that Defendant violently

16  removed her from her car, injured her in doing so, groped her breast and labia—the latter

17  under her clothing—and then violently threw her headlong onto the floor of his patrol

18  vehicle. She produced some photographic evidence to support her alleged injuries. Had the

19  jury credited Plaintiff's version of events, and had it concluded any of those acts were more

20  than reasonably necessary to detain, arrest or search Plaintiff, it could have returned a

21  verdict for her on Claim 1.

22      Similarly, if the jury credited Plaintiff's testimony that Defendant groped her breast

23  and labia incident to search or otherwise, it could have found for her on Claim 4. Finally,

24  If the jury credited Plaintiff's testimony and photographs of alleged physical injuries and

25  her testimony about her mental anguish and residual distress, it could have plausibly found

26  for her on Claim 8. That the jury did not credit Plaintiff's testimony on some or all of these

27  issues is not, as Defendants seem to argue, demonstrative of bad faith, vexatiousness,

28  wantonness or oppressiveness on her part in maintaining the three surviving claims. The

Court rejects that circular argument. Claims 1, 4 and 8, though unsuccessful, were not brought in subjective bad faith or recklessly. Attorneys' fees for them will not lie pursuant to either Section 1927 or the Court's inherent authority.

For the foregoing reasons,

**IT IS ORDERED** denying Defendants' Motion for Attorneys' Fees and Costs (Doc. 235).

Dated this 25th day of October, 2021.

_____
Honorable John J. Tuchi
United States District Judge